874 F.2d 209
 Jaime TRAVERSO, Sr., Plaintiff-Appellant,
v.
Carleton PENN, Judge, Defendant-Appellee.
Jaime TRAVERSO, Sr., Plaintiff-Appellant,
v.
Kevin M. O'CONNELL, Defendant-Appellee.
Jaime TRAVERSO, Sr., Plaintiff-Appellant,
v.
Dave BELEW, Investigator, Loudoun County Sheriff's Dept.;
R.J. Gibson, Investigator, Loudoun County Sheriff's Dept.;
R.P. Daniele, Investigator, Fairfax County Police Dept., in
their individual and official capacities,
Defendants-Appellees. (Two Cases)
 Nos. 87-6043, 87-6044, 87-6055 and 87-6069.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 5, 1988.
Decided May 10, 1989.
 
 Laura Holt Hamilton (Hunton & Williams, on brief) for plaintiff-appellant.
 James Walter Hopper (Warren H. Britt, Parvin, Wilson, Barnett & Hopper, Robert M. Ross, on brief) for defendants-appellees.
 Before PHILLIPS, MURNAGHAN and WILKINSON, Circuit Judges.
 PHILLIPS, Circuit Judge:
 
 
 1
 Jaime Traverso appeals from the dismissal of his Sec. 1983 action brought against three Virginia police officers for their allegedly unconstitutional actions during the investigation of the murder of Traverso's ex-wife, for which Traverso was convicted by a Virginia state court. Traverso also appeals from the district court's imposition of Rule 11 sanctions. The United States District Court for the Eastern District of Virginia granted summary judgment for the three officers on the grounds that the alleged violations had been fully litigated in Traverso's criminal trial and were therefore barred in the civil action by the doctrine of res judicata. The court also ordered Traverso to pay $1,000 in fees and costs, finding that his claims were meritless and that he had pursued them primarily to harass the authorities responsible for his conviction.
 
 
 2
 We vacate the grant of summary judgment on res judicata grounds, primarily because Traverso's state court conviction has been reversed during pendency of this appeal. But we remand with directions to stay the action under abstention principles pending the termination of any renewed state court prosecution. In light of these developments, we also vacate the award of Rule 11 sanctions without addressing the question whether they were proper when imposed.
 
 
 3
 * After Traverso was convicted in a Virginia state court for the first-degree murder of his ex-wife, he brought several Sec. 1983 actions against various state officials involved in his arrest, prosecution and ultimate conviction. All the actions were dismissed on the merits by summary judgments and Traverso's appeals from each were then consolidated. During the appeal's pendency Traverso voluntarily dismissed two of the actions, leaving only one for consideration. The remaining action, brought against three Virginia police officers, alleges various constitutional violations in connection with the officers' investigation of his ex-wife's murder. Specifically, it alleges, inter alia, that the officers interrogated Traverso while he was in custody without giving the required Miranda warnings; that they denied his repeated requests to call his attorney from the police station; that they searched and seized his property without a proper search warrant; and that they arrested him illegally because jurisdiction did not exist in Virginia. The complaint sought compensatory and punitive damages; a declaratory judgment that the actions complained of violated both state and federal constitutional law; and an injunctive order, instructing the defendants to refrain from further violations, to return Traverso's seized property, and to suppress all illegally obtained evidence.[1]
 
 
 4
 In granting summary judgment against Traverso in this (and the voluntarily dismissed actions) the district court held that the issues of (1) whether Traverso had been "in custody" during questioning, necessitating Miranda warnings; (2) whether venue of the crime properly lay in Virginia, thereby providing Virginia with the requisite jurisdiction to prosecute Traverso; and (3) whether the police searched Traverso's car illegally, already had been "actually" and "necessarily" litigated at the criminal trial and had been resolved against Traverso. Therefore, according to the court, Traverso was collaterally estopped from relitigating in his civil action his charges of illegal interrogation, illegal arrest for want of jurisdiction and illegal search of his car. The district court also determined that judgment for defendants was proper on Traverso's claim that the police repeatedly denied his requests to speak to counsel. The court explained that Traverso was not entitled to counsel at the time of his requests under either the fifth or sixth amendment as he was not yet "in custody," an issue fully litigated and determined at the criminal trial, nor had adversary judicial proceedings yet been initiated. Finally, the court held that Traverso's other personal property had been properly seized under a facially valid warrant.
 
 
 5
 In its order granting the defendants' motions for summary judgment, the court suggested that the imposition of Rule 11 sanctions against Traverso for filing "frivolous" claims would be appropriate, but reserved ruling on the question until Traverso had had an opportunity to be heard. The court later rejected Traverso's objections to the imposition of sanctions, reasoning that "virtually all" of Traverso's claims were either decided at his criminal trial and were thus "clearly barred by the doctrine of res judicata," were "simply absurd," or lacked "any basis in law or fact." The court further explained that, while a finding of bad faith is not necessary to justify the imposition of Rule 11 sanctions, Traverso's "attempt to sue everyone involved in his prosecution, as well as the extensive and inflammatory discovery motions filed by him, gives rise to the inference that this suit was filed, at least in part, to harass." After reviewing the defendants' proffered attorneys' fees and expenses, the court ordered Traverso to pay defendants a total of $1000. This appeal followed.
 
 
 6
 As indicated, during the pendency of this appeal the Court of Appeals of Virginia overturned Traverso's criminal conviction, holding that Virginia lacked jurisdiction to prosecute Traverso because venue properly lay in Maryland.[2] Traverso thereupon abandoned several of his original claims and now presses only one on appeal--his fifth amendment claim alleging Miranda violations. He, of course, also challenges the district court's imposition of Rule 11 sanctions. The appellees now concede that the district court's grant of summary judgment on res judicata grounds and its award of attorney fees cannot stand in view of the intervening reversal of Traverso's conviction.
 
 
 7
 The issue of further proceedings remains.
 
 II
 
 8
 We agree at the outset that the district court's res judicata determination can no longer stand. In Virginia, as generally, subsequent actions are not barred by res judicata if the court in the first action did not have subject matter jurisdiction over the proceedings. Lloyd v. American Motor Inns, Inc., 231 Va. 269, 343 S.E.2d 68, 69 (1986). Therefore, when the Virginia Court of Appeals reversed Traverso's conviction on the ground that venue was not properly laid in Virginia, the criminal action was stripped of all preclusive effect. See E.I. Du Pont De Nemours & Co. v. Richmond Guano Co., 297 F. 580, 584 (4th Cir.1924) (reversal necessitates vacation of res judicata determination).[3]
 
 III
 
 9
 Vacating the summary judgment, however, raises another issue which, though not addressed by the parties, we are compelled to address: whether under the circumstances Traverso's Sec. 1983 action should be allowed to proceed at this time pending any renewed prosecution in state courts. In this connection we observe that we were advised on oral argument that criminal prosecution of Traverso in a Maryland state court was either imminent or underway; and we write on that assumption.
 
 
 10
 The unusual course of proceedings here has produced a procedural situation not exactly like either of those in which the problem of interrelated Sec. 1983 actions and state criminal prosecutions is usually presented to the federal courts. In one, a Sec. 1983 action is brought in federal court by a defendant in a pending state-court criminal action challenging on constitutional grounds either the very prosecution of the state action, or its conduct in particular ways, or the conduct of state officials of the prosecuting state in investigating or prosecuting the action. See, e.g., Suggs v. Brannon, 804 F.2d 274 (4th Cir.1986) (challenging enforcement of state obscenity law and manner of investigation); Mann v. Jett, 781 F.2d 1448 (9th Cir.1986) (alleging denial of right to counsel). In the other, a Sec. 1983 action is brought in federal court by an already convicted state prisoner challenging on constitutional grounds the conduct of state officials in investigating or prosecuting the state criminal action. See, e.g., Leonard v. Hammond, 804 F.2d 838, 840 (4th Cir.1986).
 
 
 11
 The principles that control the proper federal court response to the Sec. 1983 actions in these two situations dictate a form of abstention in each. In the first, where the state criminal prosecution is pending, the comity concerns of Younger v. Harris, 401 U.S. 37, 43-45, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 (1971), and its progeny require abstention where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action. In the second, where state court conviction has already occurred, we have required in this circuit a form of "abstention" where the constitutional challenge in the Sec. 1983 action would, if successful, provide a means for invalidating the state conviction under preclusion principles. In this situation, we have treated the Sec. 1983 action as, in effect, an indirect habeas corpus challenge to the criminal conviction, and accordingly have required "exhaustion," as under 28 U.S.C. Sec. 2254(b), of all available state remedies before proceeding with the Sec. 1983 action as such. See Hamlin v. Warren, 664 F.2d 29, 31-32 (4th Cir.1981).
 
 
 12
 As the situation presented here has evolved, it has had the features of both of these classic patterns, but in its present stage is not perfectly representative of either. When this Sec. 1983 action was commenced, the plaintiff was a Virginia prisoner who asserted in his Sec. 1983 action constitutional challenges to the conduct of Virginia officials which if upheld would have invalidated his criminal conviction. Under Hamlin, we would at that point have required exhaustion of available state remedies for challenging the state conviction before proceeding with the Sec. 1983 action.
 
 
 13
 That situation has not continued in this case, however, because of the later reversal and dismissal of his Virginia conviction. But the situation that then developed and now obtains is one in which the same essential result is required under Younger principles. Now we have a Sec. 1983 action raising constitutional issues that are potentially subject to adjudication in a pending new state criminal prosecution.
 
 
 14
 The conceded variations in our situation from the classic Younger pattern are immaterial.
 
 
 15
 That the criminal prosecution now pending is in another state than that of the officials whose conduct is the subject of constitutional challenge in the Sec. 1983 action does not alter the essential comity concerns of Younger. The Virginia officials' conduct will be equally subject to constitutional challenge in any Maryland criminal action, see Stevenson v. State, 43 Md.App. 120, 403 A.2d 812, 815 (1979) (ruling that exclusionary rule might have excluded evidence obtained by out-of-state officers if they had been acting as government officials rather than private citizens), aff'd, 287 Md. 504, 413 A.2d 1340 (1980), and the concerns about federal preemption of the Maryland court's constitutional adjudication will therefore be the same as if the action were pending in a Virginia state court.
 
 
 16
 That the Sec. 1983 claim at issue seeks not only injunctive and declarative relief but money damages as well does not preclude abstention as to the whole action. Under our decisions, the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory claims. See Suggs v. Brannon, 804 F.2d at 279-80 (stay rather than dismissal appropriate to guard against statute of limitations problems); see also Deakins v. Monaghan, 484 U.S. 193, 108 S.Ct. 523, 529-30, 98 L.Ed.2d 529 (1988) (approving Third Circuit rule requiring stay rather than dismissal of Sec. 1983 damages claims where parallel state criminal action pending).
 
 
 17
 Finally, any uncertainty about the exact stage of the Maryland prosecution, or whether it is indeed being pursued, is of no consequence. The abstention we order will be in the form of a stay pending ultimate termination of the state prosecution, including any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution.[4]
 
 IV
 
 18
 We therefore vacate the summary judgment entered by the district court and remand for entry of an order staying further proceedings in conformity with this opinion. We also vacate the district court's order imposing Rule 11 sanctions upon plaintiff, without prejudice to its reconsideration upon ultimate termination of the action in the district court.
 
 
 19
 SO ORDERED.
 
 
 
 [1]
 Traverso apparently prepared his complaints seeking, inter alia, injunctive and declaratory relief, including suppression of evidence, before his state trial began. For whatever reason, however, his action was not actually commenced until the trial was concluded, at which time the claims for injunctive and declaratory relief were arguably moot. As events developed however, the later reversal of his conviction could be thought to have made these claims again justiciable
 
 
 [2]
 Because the victim's body was found in the Potomac River, which flows between Virginia and Maryland, there was some initial confusion about the proper venue of the crime. In overturning Traverso's conviction, the Virginia Court of Appeals ruled that, based on a reading of the relevant statute, venue could not have existed in Virginia. Therefore, because venue is jurisdictional in Virginia criminal law, the Virginia authorities lacked jurisdiction to prosecute Traverso. See Va.Code Ann. Secs. 19.2-244 ("Except as otherwise provided by law, the prosecution in a criminal case shall be had in the county or city in which the offense was committed.") and 19.2-247 ("Where evidence exists that a homicide has been committed ..., under circumstances which make it unknown where such crime was committed, the offense shall be ... prosecut[ed] in the courts of the county or city where the body of the victim may be found, as if the offense had been committed in such county or city.")
 
 
 [3]
 Given this basis for vacating the grant of summary judgment, we need not consider whether the res judicata determination may have been erroneous from the outset under Virginia's general rule against giving preclusive effect in civil actions to issues previously litigated in criminal trials. See, Haring v. Prosise, 462 U.S. 306, 314-17, 103 S.Ct. 2368, 2373-75, 76 L.Ed.2d 595 (1983) (rule based on lack of mutuality of estoppel); Selected Risks Ins. Co. v. Dean, 233 Va. 260, 355 S.E.2d 579, 580-81 (1987) (mutuality rule reasserted)
 
 
 [4]
 In Younger, the Court noted that it was "express[ing] no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun." Younger, 401 U.S. at 41, 91 S.Ct. at 749 (emphasis added). Based on the narrow circumstances of this case, where we assume that reprosecution in Maryland courts is now pending, we are satisfied that the Younger principles are properly in play