COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Agee* and Kelsey
Argued at Salem, Virginia


DARRELL W. WEIKLE

MEMORANDUM OPINION** BY
v.    Record No. 1346-02-3          JUDGE D. ARTHUR KELSEY
                                       MARCH 11, 2003
THE SOUTHLAND CORPORATION AND
 AMERICAN PROTECTION INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

    Deborah W. Dobbins (Gary C. Hancock;
    Timothy Kirtner; Gilmer, Sadler, Ingram,
    Sutherland & Hutton, on briefs), for
    appellant.

    Monica Taylor Monday (Dale W. Webb;
    Gentry Locke Rakes & Moore, on briefs),
    for appellees.


    The appellant, Darrell W. Weikle, challenges the Workers'

Compensation Commission's denial of his claim for permanent and

total disability benefits for a traumatic brain injury.  The

commission erred, Weikle argues, by determining that it lacked

jurisdiction to decide his claim because Weikle failed to file a

claim for this specific injury within the two-year period mandated

---

     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     ** Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

by Code § 65.2-601.  For the following reasons, we agree with the commission and affirm its decision.

I.

On appeal from a decision of the commission, "we view the evidence in the light most favorable to the prevailing party" and grant that party the benefit of all reasonable inferences.  Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429-30, 573 S.E.2d 312, 315 (2002); Grayson County Sch. Bd. v. Cornett, 39 Va. App. 279, 281, 572 S.E.2d 505, 506 (2002) (citation omitted).

On August 17, 1990, Darrell W. Weikle, a truck driver for The Southland Corporation, was preparing to make a delivery to a convenience store.  As Weikle's truck backed to the store, another vehicle struck the delivery truck and injured Weikle.  Weikle was admitted to the emergency room of a local hospital where he complained of lower back and elbow pain.  He denied suffering a head injury and received a "perfectly normal" score on a coma test.

On August 28, less than two weeks after the accident, Weikle told Dr. Thomas Brown, an orthopedic surgeon, that he continued to feel "some pain in the left scapular area," but the pain in his neck, left knee, and shoulders had dissipated.  Dr. Brown noted Weikle's improvement and authorized him to return to work the following day, provided that he refrain from any heavy lifting, squatting, or overhead reaching.

-

Weikle visited Dr. Kenneth Gray, a second orthopedic surgeon, on November 7, 1990. Weikle told Dr. Gray that he felt pain in his neck, left shoulder, and middle and lower back. Gray took x-rays of the areas of Weikle's complaints and also conducted a "bone scan" to detect any fractures. Both tests indicated that Weikle suffered no abnormalities or fractures. Gray later referred Weikle to Dr. Richard Jackson.

When Weikle met Dr. Jackson on January 24, 1991, Weikle mentioned that, other than occasional "tingling" in his left hand, he no longer felt discomfort in his elbow, hip, knee, lower back, or left arm. Weikle did complain, however, that his "neck hurts all the time, mainly on the left." He also mentioned suffering from "daily headaches" that would "come and go," which were similar in discomfort level to the "sinus headaches" he had been suffering for many years. Based on his observations, Dr. Jackson diagnosed Weikle with a "cerebral concussion" with "cervical and dorsal myofascial pain."

Three months later, on April 10, 1991, Dr. Jackson noted that Weikle suffered "chronic cranial, cervical and thoracic myofacial pain" and had a "vascular headache syndrome." Despite these diagnoses, Dr. Jackson observed that Weikle's "mental status," "cranial nerves," and senses were all normal. Weikle's "cerebellar examination" was also "normal." Based on Dr. Jackson's diagnoses, Southland began providing disability

-

benefits to Weikle for a "cervical sprain" and a "thoracic sprain."

Weikle visited Dr. Alan M. Katz, a clinical psychologist and neuropsychologist, on July 16, 1992, to ascertain "the nature and extent of his psychological difficulties" following his accident. Dr. Katz determined that Weikle's "current psychological state is one of anxiety and hopelessness." Weikle experienced "chronic fatigue" and had "difficulty maintaining sleep." Dr. Katz noted Weikle's complaints of "persistent and unrelenting head and neck pain," but also recognized Weikle's "minor tendency to embellish or exaggerate pain." After administering a number of psychological tests, Dr. Katz concluded that Weikle suffered from "unresolved symptoms of a Post Traumatic Stress Disorder."

On July 29, 1991, Weikle signed a Memorandum of Agreement with Southland. The Agreement recognized Weikle's injuries to his "back, neck, left hip, knee and elbows." Southland and Weikle (who was represented by counsel) then prepared an identical supplemental agreement, dated September 9, 1991. On December 20, 1991, the commission issued an Award Order approving the agreement. The Order provided $404 weekly benefits "during partial incapacity" from July 17, 1991 to August 27, 1991. Beginning August 28, 1991, the Order awarded $404 weekly in temporary benefits "for as long as necessary."

-

Fearing that he had suffered a "mild stroke," Weikle underwent a CT scan of his head on April 19, 1992. The scan was found to be normal. Nevertheless, Weikle complained to his neurologist, Dr. Steven Nack, that he was continuing to experience headaches as well as pain in his neck and upper spine. Noting that Weikle had denied suffering "any significant head, neck, or spine injuries," Dr. Nack found Weikle's speech "fluent" and his articulation, concentration, repetition, recognition and comprehension "normal." Based on these observations, Dr. Nack determined that Weikle's neurological examination was "normal."[1]

About four years later, Weikle sought payment of medical bills for treatment he received at the Hollins Head Injury Program. On February 14, 1995, a deputy commissioner upheld Weikle's claim, finding that Weikle sustained a "closed head injury" in the 1990 accident, which authorized him to receive treatment at the Hollins Head Injury Program at Southland's expense.

On April 28, 2000, Weikle filed a claim for permanent and total incapacity due to a brain injury. See Code § 65.2-503(C)(3) (permanent and total incapacity due to "[i]njury to the brain which is so severe as to render the employee permanently unemployable in gainful employment"). On March 14, 2001, a deputy

---

[1] Weikle continued to see several other doctors during and after 1992, voicing the same general complaints.

commissioner held that the commission lacked jurisdiction to award compensation for a brain injury because Weikle did not file his claim within two years of the accident. The deputy commissioner also found that Weikle failed to prove that his 1990 accident caused his brain injury or that this injury had permanently and totally disabled him.

On appeal to the full commission, Weikle admitted that "he failed to file a claim for a traumatic brain injury within two years of the April 17, 1990, motor vehicle accident" and that "neither the claimant, the carrier, nor the employer knew the correct origin of the injuries to the claimant before the statute expired." He thus conceded that "timely notice was not given."

Weikle argued that the absence of a timely claim should not matter because "the employer had actual notice of a traumatic brain injury within the statutory period." The commission disagreed, holding (i) no "actual notice" exception exists to the requirement of a timely claim, (ii) even "assuming the existence of an actual notice exception," Southland did not have actual knowledge of Weikle's alleged "traumatic brain injury" within the two-year period, and (iii) the only credible medical evidence in the case disproved Weikle's assertion that he suffered a traumatic brain injury as a result of the 1990 accident.

II.

On appeal, we defer to the commission in its role as fact finder. VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002). "If supported by credible evidence, the factual findings of the commission are binding on appeal." Tomes, 39 Va. App. at 430, 573 S.E.2d at 315 (citation omitted). In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

On the other hand, we "review questions of law de novo," Tomes, 39 Va. App. at 430, 573 S.E.2d at 315 (citation omitted), and do not consider ourselves "bound by the legal determinations made by the commission." Grayson County Sch. Bd., 39 Va. App. at 281, 572 S.E.2d at 506 (citation omitted); see also Sturtz v. Chesapeake Corp., 38 Va. App. 672, 675, 568 S.E.2d 381, 383 (2002). Even so, with regard to the commission's interpretation of relevant statutes, "we follow the settled rule that the construction accorded a statute by public officials charged with its administration is entitled to be given weight by the courts." Sturtz, 38 Va. App. at 675, 568 S.E.2d at 383; see also Lam v. Kawneer Co., 38 Va. App. 515, 519, 566 S.E.2d 874, 876 (2002) ("Interpretations of the act by the commission are entitled to great weight.").

-

III.

An injured employee must file a claim with the commission within two years of the accident.  If the claimant fails to meet this filing deadline, the right to compensation "shall be forever barred."  Code § 65.2-601.  "Timely filing of an original claim is jurisdictional, and a claimant bears the burden of proving his claim was timely filed."  Johnson v. Johnson Plastering & Nat'l Sur. Corp., 37 Va. App. 716, 723, 561 S.E.2d 40, 43 (2002) (quoting Massey Builders Supply Corp. v. Colgan, 36 Va. App. 496, 502, 553 S.E.2d 146, 149 (2001)); see generally Shawley v. Shea-Bell Constr. Co., 216 Va. 442, 446, 219 S.E.2d 849, 853 (1975).[2]

Weikle conceded before the commission that "he failed to file a claim for a traumatic brain injury" within the two-year deadline and that "timely notice was not given."  Weikle argues, however, that the absence of a timely claim should not matter because Southland had "actual notice of a traumatic brain injury within

---

[2] See also Stuart Circle Hosp. v. Alderson, 223 Va. 205, 209, 288 S.E.2d 445, 447 (1982); Barksdale v. H.O. Engen, Inc., 218 Va. 496, 497, 237 S.E.2d 794, 795 (1977); Binswanger Glass Co. v. Wallace, 214 Va. 70, 73, 197 S.E.2d 191, 193 (1973); Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 50, 122 S.E.2d 666, 667 (1961); Winston v. City of Richmond, 196 Va. 403, 410, 83 S.E.2d 728, 732 (1954); Metro Machine Corp. v. Sowers, 33 Va. App. 197, 204, 532 S.E.2d 341, 345 (2000); Lynchburg Foundry Co. v. McDaniel, 22 Va. App. 307, 310, 469 S.E.2d 85, 87 (1996); Mayberry v. Alcoa Bldg. Prods., 18 Va. App. 18, 20, 441 S.E.2d 349, 350 (1994).

-

the statutory period."  Weikle also contends that the deputy

commissioner's 1995 award, ordering payment of medical bills for a

traumatic brain injury, should receive res judicata effect and

thereby preclude Southland from now invoking Code § 65.2-601's

two-year deadline.  We disagree with both assertions.

First, the commission correctly held that Code § 65.2-601's

claim requirement cannot be obviated merely by demonstrating the

employer's actual notice of the alleged injury.  Though we have

recognized exceptions to the two-year claim requirement,[3] we have

never dispensed altogether with Code § 65.2-601's limitation

period on any actual notice theory of de facto compliance.

Indeed, in Cibula v. Allied Fibers & Plastics, 14 Va. App. 319,

324, 416 S.E.2d 708, 711 (1992), aff'd, 245 Va. 337, 428 S.E.2d

905 (1993), we recognized that an employer's "voluntary payment"

of an injured employee's medical bills does not, by itself, estop

the employer from invoking the two-year limitation bar of Code

§ 65.2-601.  See also Stuart Circle Hosp. v. Alderson, 223 Va.

205, 208, 288 S.E.2d 445, 447 (1982).  For the same reason, mere

actual notice of an injury would never suffice, by itself, as an

---

[3] See Niblett v. Piedmont Aviation, Inc., 12 Va. App. 652,
405 S.E.2d 635 (1991) (fraud and concealment); Avon Prods., Inc.
v. Ross, 14 Va. App. 1, 415 S.E.2d 225 (1992) (recognizing
imposition); Cibula v. Allied Fibers & Plastics, 14 Va. App.
319, 416 S.E.2d 708 (1992), aff'd, 245 Va. 337, 428 S.E.2d 905
(1993) (equitable estoppel).

-

exception to Code § 65.2-601's requirement that a timely claim be filed.

Second, we also agree with the commission's conclusion that the 1995 medical award order does not have preclusive effect. Res judicata "precludes relitigation of a claim or issue once a final determination on the merits has been reached by a court of competent jurisdiction." Neff v. Commonwealth, 39 Va. App. 13, 18, 569 S.E.2d 72, 75 (2002). For this preclusion doctrine to apply, "the court in the first proceeding must have had jurisdiction over the subject matter of the controversy and the precise issue upon which the judgment was rendered." Lloyd v. Am. Motor Inns, Inc., 231 Va. 269, 271, 343 S.E.2d 68, 69 (1986).

After the expiration of the two-year period in 1992, the commission had no "jurisdiction" over Weikle's claim for a traumatic brain injury. Shawley, 216 Va. at 446, 219 S.E.2d at 852. As a result, the deputy commissioner erred in assuming jurisdiction in 1995 over the traumatic brain injury claim. "The commission obtains jurisdiction of a compensation claim when 'a claim be filed' within two years after the accident." Stuart Circle Hosp., 223 Va. at 208-09, 288 S.E.2d at 447. Weikle's claim, by his own admission, "was not so filed." Id. at 209, 288 S.E.2d at 447.

In his reply brief on appeal, Weikle argues that res judicata should apply because the deputy commissioner in 1995 lacked only

-

"notice" jurisdiction, not subject matter jurisdiction.  Because

Weikle did not make this argument to the commission, however, Rule

5A:18 precludes us from addressing it on appeal.  See Cibula, 14

Va. App. at 323, 416 S.E.2d at 710-11.[4]

Rule 5A:18 should not apply, Weikle contends, because the

"issue" of subject matter jurisdiction cannot be waived as a

matter of law.  We acknowledge this general proposition, but find

it inapplicable to this case.

A challenge to subject matter jurisdiction cannot be waived

and can be considered de novo by an appellate court.  Commonwealth

v. JOCO Found., 263 Va. 151, 160, 558 S.E.2d 280, 284 (2002);

Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001).

It is because subject matter jurisdiction "involves a court's

power to hear a case" that challenges to it "can never be

forfeited or waived."  United States v. Cotton, 535 U.S. 625, 122

S. Ct. 1781, 1785 (2002); see also JOCO Found., 263 Va. at 160,

558 S.E.2d at 284 (A court cannot exercise power not "granted by

constitution or statute.").

On the other hand, an argument in support of a court's

jurisdiction can be waived like any other argument.  See, e.g.,

_____

[4] We see no reason for applying the "good cause" or "ends of justice" exceptions to Rule 5A:18.  The Virginia Supreme Court in Stuart Circle Hospital, 223 Va. at 208, 288 S.E.2d at 447, held that jurisdiction "cannot be conferred on the Commission by consent."  If the jurisdiction being examined there was something other than subject-matter jurisdiction, it logically could have been conferred on the commission by consent.

McFarland v. Commonwealth, 39 Va. App. 511, 515 n.1, 574 S.E.2d 311, 313 n.1 (2002). In this situation, even if the waived argument were true, the only harm would be that the court erroneously failed to exercise jurisdiction it possessed. Like any number of waivable errors made when a court does not grant a claimant's request for relief, failing to exercise jurisdiction does not involve a court overreaching its "power" to hear the case. Cotton, 122 S. Ct. at 1785.

Weikle's distinction between notice and subject matter jurisdiction does not attack the deputy commissioner's power to adjudicate a traumatic brain injury claim in 1995. To the contrary, Weikle seeks to support the assertion of jurisdiction, and thus, preserve the preclusive effect of the res judicata doctrine. Weikle's argument, therefore, falls within the scope of Rule 5A:18.

IV.

Given Weikle's concession that he failed to file a timely claim for a traumatic brain injury, we hold that Southland's alleged actual notice of the injury does not affect Code § 65.2-601's statutory bar against asserting an untimely claim. We also agree with the commission that the 1995 medical award order should not be given res judicata effect because the deputy

-

commissioner did not, at that time, have jurisdiction over any claim for a traumatic brain injury.

                                                    Affirmed.