MEMORANDUM OPINION

HILTON, District Judge.
This matter came before the court on a Motion for Summary Judgment by defendants John R. Isom and John Webb. John R. Isom is the Sheriff of Loudoun County, Virginia. John Webb is a First Lieutenant in the Sheriffs Department. Plaintiff Lisa M. Beardsley was a Second Lieutenant in the Sheriffs Department under the supervision of Lt. Webb prior to her resignation on August 24,1992. The plaintiff has sued Isom and Webb for sexual harassment and discrimination that she allegedly experienced at the Loudoun Sheriffs Department in 1992.
Motions for summary judgment are proper if the pleadings, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party will prevail as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(c) mandates entry of summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of the case on which that party has the burden of proof. Id.
Beardsley joined the Loudoun Sheriffs Department in 1984 and served as a squad supervisor from February 1991 until her resignation. Lt. Webb served as Lt. Beardsley’s supervisor for a period in 1991 and again beginning in March 1992.
Beardsley alleges sexual harassment because Lt. Webb called her “honey” and “dear,” touched her shoulder and massaged it for 10-20 seconds on two occasions (once in front of her husband, a sergeant, who did nothing), accused her of “making out” with other officers and asked intimate questions about her methods of birth control and her underwear. She also alleges that she learned from her husband that Lt. Webb wished to “borrow” her and take her to a bar in West Virginia “all dolled up in tight clothes.” She alleges that on May 5, 1992, Lt. Webb requested that she drive him to his car and that it was “his turn” to “make out” with her in the parking lot.
Webb denies any sexual harassment and says that it was not unusual for him to lay his hand on one of his deputies’ arms and shoulders in a spirit of camaraderie. He denies any “sexual” impropriety with respect to Beardsley because of the presence of her husband. Webb says that Beardsley confided to him that she did not want to have another child and that birth control was a right she had to prevent further births. Webb says that his use of the words “honey” and “dear” were stated without any intention of offending Beardsley and that as soon as she requested him to stop using them, he did. Webb denies that he ever requested borrowing her to take her to West Virginia.
On May 19, 1992, Lt. Beardsley complained to Sheriff Isom about Lt. Webb’s behavior. Isom then reprimanded Webb. Although Beardsley has conceded that Webb’s alleged harassment then stopped, she alleges that he then gave her the “cold shoulder” treatment by not speaking to her. She also alleges that he then took steps to undermine her ability to supervise her squad by criticizing her assignments of various police jobs to her deputies and creating tension between her and a deputy regarding his ra *399 dio techniques. Webb has responded that as her supervisor he was within his authority to criticize her assignment decisions and that the tension she alleges with the deputy existed before Webb became her supervisor. On July 12, 1992, Beardsley again met with Sheriff Isom to complain about Webb. A subsequent investigation about the disputes between Beardsley and her squad members conducted by Captain J.M. Brown found her complaints to be without merit. On August 24, 1992, Beardsley resigned from the department.
This suit is brought under 42 U.S.C. § 1983. Count I charges that Sheriff Isom deprived former Lt. Beardsley of her Fourteenth Amendment due process rights under color of law in his official capacity. Count II charges that Sheriff Isom deprived former Lt. Beardsley of her Fourteenth Amendment rights to equal protection of the laws in his official capacity. Count III charges that Sheriff Isom deprived former Lt. Beardsley of her Fourteenth Amendment due process rights under color of law in his individual capacity. Count IV charges that Sheriff Isom deprived former Lt. Beardsley of her Fourteenth Amendment rights to equal protection of the laws in his individual capacity. Count V charges that Lt. Webb deprived former Lt. Beardsley of her Fourteenth Amendment rights to equal protection of the laws in his individual capacity. Count VII is a Virginia pendant jurisdiction claim charging Lt. Webb with intentional infliction of emotional distress.
The defendants argue that the Civil Rights Act of 1991 amending the Civil Rights Act of 1964 supplanted 42 U.S.C. § 1983 as a federal discrimination statute by adding compensatory damages and a jury trial to Title VII. See Marrero-Rivera v. Dept. of Justice of the Commonwealth of Puerto Rico, 800 F.Supp. 1024 (D.Puerto Rico, 1992) (By erasing the differences between Title VII and section 1983, the 1991 Civil Rights Act preempted action under § 1983.). Although the comprehensive amendments to Title VII in 1991 might suggest the conclusion reached by the court in Marrero-Rivera, Title VII still does not yet provide all of the relief available under section 1983 to victims of discrimination. Section 1983 continues to allow employees such as Lt. Beardsley to avoid Title VII’s statute of limitations period and Equal Employment Opportunity Commission filing requirements because § 1983 is subject to the statute of limitations of a personal injury action and has no administrative filing requirements. 42 U.S.C. § 1983; Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C. § 2000e et seq.
The Fourth Circuit Court of Appeals has concluded that the 1972 amendments to the Civil Rights Act of 1964 did not make Title VII an exclusive remedy for employment discrimination on the grounds that Congress wanted to retain multiple means for citizens to attack discrimination including the Constitutional shield available under § 1983. Keller v. Prince George’s County, 827 F.2d 952, 965 (4th Cir.1987) (Wilkinson, J., concurring) (“Congress weighed the vexatiousness, of multiple actions for a single offense against the need to assault the evil of discrimination with a varied legal arsenal. Congress found the latter value paramount.”); Accord Dwyer v. Smith, 867 F.2d 184 (4th Cir.1989). Just as the Court of Appeals found no intent for the 1972 amendments to Title VII to preempt § 1983 in Keller and Dwyer, neither the text of the Civil Rights Act of 1991 nor its legislative history indicate any intent by Congress or the President for the newly amended Title VII to preempt § 1983. Act of November 21, 1991, Pub.L. No. 102-166, 1991 U.S.C.C.A.N. (105 Stat.) 1071, Legislative History 549-767, Signing Statement of the President 768-769.
The plaintiff alleges in Counts I and III that Sheriff Isom violated her due process rights by failing to adequately investigate her complaint about Lt. Webb’s alleged misconduct. The Supreme Court has stated that in due process claims such as this action, the threshold issue is whether the circumstances of Lisa Beardsley’s employment created any property right and interest in continued employment under state law. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Neither the Virginia Constitution nor § 15.1 — 48.1 of the Virginia Code create a property interest in the plain *400 tiffs employment. See Jenkins v. Weatherholtz, 909 F.2d 105 (4th Cir.1990) (As an at-will employee, discharged deputy sheriff has no civil rights action for deprivation of due process because he had no property right in continued employment under Virginia law.). Because the plaintiff lacks any property right in continued employment under Virginia law, Counts I and III against Sheriff Isom must be dismissed.
The plaintiff alleges in Counts II and IV that Sheriff Isom violated her equal protection rights. There is no evidence that Sheriff Isom ever sexually harassed or discriminated against former Lt. Beardsley. Also, there is no respondeat superior between Lt. Webb and Sheriff Isom under 42 U.S.C. § 1983. Monell v. Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The undisputed facts are that after both of the plaintiffs complaints in May and July 1992, Sheriff Isom investigated the complaints and took the appropriate action toward correcting the problem. After his investigation of Beardsley’s May 1992 complaint, for example, Sheriff Isom reprimanded Lt. Webb. Sheriff Isom’s affirmative steps toward resolving the problem refute the plaintiffs allegation that he was indifferent or tacitly authorized Lt. Webb’s alleged misconduct. Cf. Slakan v. Porter, 737 F.2d 368, 372 (4th Cir.1984) (“[Supervisory officials may be held hable in certain circumstances for the constitutional injuries inflicted by their subordinates____ Liability in this context is not premised on respondeat superior, ... but on a recognition that supervisory indifference or tacit authorization of subordinates’ misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.”). Moreover, the plaintiff has failed to allege facts amounting to a claim of constructive discharge against Sheriff Isom for deliberately making working conditions intolerable and thereby forcing her to quit. EEOC v. Service News Co., 898 F.2d 958, 962 n. 1 (4th Cir.1990). To the contrary, Sheriff Isom took steps to end the alleged misconduct. The plaintiffs allegations that Sheriff Isom violated her equal protection rights in Counts II and IV must therefore be dismissed.
The sexual harassment claims against Lt. Webb in Count V cannot be dismissed because there are genuine issues of material fact in dispute regarding Lt. Webb’s comments before he was reprimanded by Sheriff Isom following former Lt. Beardsley’s first complaint in May 1992. There are also genuine issues of material fact in dispute regarding Lt. Webb’s alleged retaliation after Lt. Webb’s alleged direct harassment ended.
The plaintiff has sued Lt. Webb in Count VII for intentional infliction of emotional distress. Defendant Webb argues that this claim should be dismissed because such intentional torts are barred by the Virginia Workers’ Compensation Act. Virginia Code § 65.2-100 et seq. Indeed, the Virginia Supreme Court has interpreted this statute to bar intentional tort suits against employers related to sexual harassment because of the exclusivity provisions of the Virginia Workers’ Compensation Act. Haddon v. Metropolitan Life Insurance Company, 239 Va. 397, 389 S.E.2d 712 (1990); Kelly v. First Virginia Bank-Southwest, 404 S.E.2d 723 (Va.1991). However, amendments to the Worker’s Compensation Act, which became effective on July 1,1992, allow sexual harassment related tort claims apart from the Worker’s Compensation Act. Virginia Code Ann. § 65.2-301(C). Thus, the only actionable part of the plaintiffs intentional infliction of emotional distress claim is what occurred after July 1, 1992.
Virginia’s tort of intentional infliction of emotional distress requires a showing of “outrageous and intolerable” conduct that offends generally accepted standards of morality and decency. Dwyer v. Smith, 867 F.2d 184, 194 (citing Womack v. Eldridge, 215 Va. 338, 210 S.E.2d 145, 148 (1974)). The Virginia Supreme Court has recently reiterated the difficulty of meeting this threshold requirement by stating that it can only be found “where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Russo v. White, 400 S.E.2d 160, 162 (Va. 1991). The issue of whether the alleged *401 conduct “is sufficiently outrageous to sustain an action is a question of law for the court.” Dwyer, 867 F.2d at 194 (citing Gaiters v. Lynn, 831 F.2d 51, 53 (4th Cir.1987)); See also Ruth v. Fletcher, 237 Va. 366, 377 S.E.2d. 412, 416 (1989) (Intentional infliction of emotional distress claims are to be “tightly controlled by the courts.”). Even when viewed in the light most favorable to the plaintiff, the claim against Lt. Webb for the period after July 1, 1992 regarding his alleged acts of gender based retaliation do not rise to the level of a claim of intentional infliction of emotional distress. The plaintiffs Count VII must therefore be dismissed.
For the foregoing reasons, the defendants’ Motion for Summary Judgment is hereby GRANTED with respect to Counts I, II, III, IV, and VII and DENIED with respect to Count V.
An appropriate order shall issue.